IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH SCHEINUCK, | No. C 09-0727 WHA (PR) |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION FOR LEAVE TO AMEND; DENYING MOTION FOR MATERIALS** |
| v. | |
| CAPTAIN D. SEPULVEDA, | |
| Defendant. | (Docket Nos. 42, 47, 57) |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, has filed a civil rights complaint under 42 U.S.C. 1983 against Captain David Sepulveda, an official and the Santa Clara County Jail, where plaintiff was formerly housed. Sepulveda has filed a motion for summary judgment. On November 19, 2010, plaintiff filed a declaration in opposition to the motion, and on December 20, 2010, plaintiff filed an opposition to the motion. Defendant has filed a reply to both. After consideration of all of these papers, and for the reasons set out below, defendant's motion for summary judgment is **GRANTED**. Plaintiff's motions for leave to amend and for additional materials are **DENIED**.

## STATEMENT

The following factual background is based on allegations in the verified complaint, the parties' declarations, and the documentary evidence submitted in connection with the motion for summary judgment.

1      Plaintiff alleges in his complaint that while he was housed at the Santa Clara County
2  Jail, other inmates who had animosity towards him were sending fumes from jail-issued
3  cleaning products and urine into his cell, a practice that is sometimes referred to as "gassing."
4  Plaintiff alleges that he informed defendant Sepulveda, the Division Commander of the Main
5  Jail, of this practice, but Sepulveda denied plaintiff's request discontinue issuing the cleaning
6  products to inmates. Although plaintiff was moved cells several times, inmates continued to
7  "gas" him.

8      According to the parties' declarations and exhibits, plaintiff wrote a letter to Sepulveda
9  on September 6, 2008, complaining that inmates were using jail-supplied cleaning materials to
10 introduce "toxic" fumes into his cell (Sepulveda Decl. ¶ 4; Scheinuck Decl. ¶¶ 25-32, Ex. C).
11 Sepulveda assigned Sergeant Scimeca to investigate, and after interviewing plaintiff and
12 investigating the matter, Scimeca reported to Sepulveda that he found no evidence that plaintiff
13 had been subjected to toxic fumes (Sepulveda Decl. ¶ 4). Sepulveda wrote to plaintiff about
14 Scimeca's findings on September 15, and informed him that based on such findings the matter
15 was closed (*ibid.*; Scheinuck Decl. ¶¶ 33-35, Ex. D).

16     On September 18, 2008, plaintiff wrote a second letter to Sepulveda, this time
17 complaining that the inmates were sending the fumes through the ventilation system (Sepulveda
18 Decl. ¶ 5; Scheinuck Decl. ¶¶ 36-44, Ex. E). Plaintiff wrote that the cleaning materials
19 contained bleach and ammonia which could be combined to create toxic fumes, and he
20 requested that inmates no longer be given "Comet" (*id.* ¶¶ 40, 43). Sepulveda ordered a staff
21 member, Correctional Officer Freund, to investigate and to make sure that bleach was not being
22 given to inmates (*id.* Ex. F; Sepulveda Decl. ¶ 5). The matter was investigated by a staff
23 member from the jail's Operations Unit, the jail's Administrative Safety Officer, and the
24 Correctional Officer assigned to plaintiff's housing unit (*ibid.*). They reported to Sepulveda
25 that no toxic or harmful chemicals were in the ventilation system in the area of plaintiff's cell,
26 that the cleaning supplies given to the inmates did not contain toxic or harmful chemicals, and
27 that inmates were not being given bleach (*ibid.*; Scheinuck Decl. ¶¶ 45-50, Ex. F). Sepulveda
28 informed plaintiff of these findings on September 24, 2008 (Sepulveda Decl. ¶ 5). Jail records

2

1    indicate that two of the cleaning materials distributed to inmates contain "ammonium
2    chlorides," and indicate that they are "incompatible" with bleach, while another cleaning
3    product ("Comet") contains bleach (Scheinuck Decl. ¶¶ 67-72, Ex. L).
4        On October 29, 2008, plaintiff wrote a third letter and an administrative grievance to
5    Sepulveda again complaining that inmates were using Comet and other jail-issued cleaning
6    materials to "gas" him and other inmates, and again requesting that the Comet be discontinued
7    (Sepulveda Decl. ¶ 6, Ex. C; Scheinuck Decl. ¶¶ 55-60, Ex. H).  Sepulveda ordered another
8    investigation, and the investigating officer reported to Sepulveda that all of the jail-issued
9    cleaning products were approved as safe products by Santa Clara County's Office of
10   Occupational Safety and Environmental Compliance ("OSEC") (Sepulveda Decl. ¶ 6, Ex. C).
11   Sepulveda reported to plaintiff on November 6, 2008, that all of the cleaning materials were
12   safe and approved by OSEC, and that none contain ammonia (*ibid.*).  On that same day, plaintiff
13   wrote to Sepulveda again claiming that inmates were receiving harmful cleaning materials from
14   the jail and using them to hurt each other (*id.* ¶ 7; Scheinuck Decl. ¶ 61).  On November 13,
15   2008, Sepulveda informed plaintiff that there had been no complaints about cleaning materials
16   from any other inmate, and that the investigations into his complaints found no hazardous
17   cleaning materials (Sepulveda Decl. ¶¶ 7-8; Scheinuck Decl. ¶ 62).  According to Sepulveda,
18   the Jail has also not received any complaints about the cleaning materials from any inmate other
19   than plaintiff (Sepulveda Decl. ¶ 8).
20       On other occasions during this time period, plaintiff also complained to various
21   correctional officers, not named as defendants in the complaint, that inmates were combining
22   Comet with ammonia-containing cleaning materials or urine in order to send toxic fumes into
23   his cell (Scheinuck Decl. ¶¶ 1-2, 6, 51-54; Exs. A, B, G).  Plaintiff's complaints were included
24   in three different reports about moving plaintiff, called "Rehousing Reports," that were for
25   Sepulveda on August 29, September 1, and September 25 (*ibid.*).  Plaintiff states "on
26   information and belief" that Sepulveda also read these reports (*id.* ¶ 1-2, 6, 51-54), and
27   Sepulveda does not confirm or deny doing so.
28

3

**ANALYSIS**

**A. MOTION FOR SUMMARY JUDGMENT**

1. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial *Ibid*. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid.*

2. Plaintiff's Claims

Plaintiff claims that Sepulveda was deliberately indifferent to his safety in failing to change the cleaning supplies issued to inmates based on plaintiff's complaints. The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The failure of prison officials to protect inmates from harm caused by other inmates or by dangerous conditions at the jail violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety. *Id.* at 834.

   a. Deliberate Indifference

Defendant argues, correctly, that there is no genuine issue of material fact that

4

1  Sepulveda acted with "deliberate indifference" to plaintiff's safety.  Neither negligence nor
2  gross negligence will constitute deliberate indifference.  *Id.* at 835-36 & n.4.  The deliberate
3  indifference standard is the same as the standard for criminal recklessness is met, i.e., the
4  official knows of and disregards an excessive risk to inmate health or safety.  *Id.* at 511 U.S. at
5  837.  The official must both be aware of facts from which the inference could be drawn that a
6  substantial risk of serious harm exists, and he must also actually draw the inference.  *Ibid.*
7  However, an Eighth Amendment claimant need not show that a prison official acted or failed to
8  act believing that harm actually would befall an inmate; it is enough that the official acted or
9  failed to act despite his knowledge of a substantial risk of serious harm.  *Id.* at 842.  This is a
10  question of fact.  *Ibid.*

11  There is no evidence that Sepulveda had knowledge that plaintiff faced a substantial risk
12  of serious harm.  While plaintiff complained on four occasions to Sepulveda that he was
13  subjected to hazardous or toxic fumes, and Sepulveda may have also heard of plaintiff's
14  complaints in reports by other staff members, the undisputed evidence indicates that Sepulveda
15  was always informed by the staff members who investigated plaintiff's complaints that the
16  cleaning materials issued to inmates were not hazardous and that plaintiff was not subjected to
17  any toxic fumes.  First, Sergeant Scimeca told Sepulveda as much after interviewing plaintiff
18  and investigating his complaints (*id.* ¶ 4).  After plaintiff's next complaint a team of Jail staff
19  members reported to Sepulveda that plaintiff's cell was clear of any hazardous fumes, that the
20  vents in the area were operational and clear, and that the cleaning agents issued to inmates were
21  not toxic (*id.* ¶ 5; Scheinuck Decl. Ex. F).  Sepulveda also directed a staff member to ensure that
22  bleach was not being distributed to inmates, and he was told that it was not, and that the only
23  use of bleach was a capful poured down the shower drains once a month by staff members
24  (*ibid.*).  Finally, in response to plaintiff's administrative grievance, another Jail staff member
25  informed Sepulveda that all of the cleaning materials issued to inmates were approved as safe
26  products by the county's occupational safety and health agency (Sepulveda Decl. ¶ 6, Ex. C).  It
27  is also undisputed that no inmate other than plaintiff ever complained to Sepulveda about toxic
28  or hazardous fumes coming from the jail-issued cleaning materials (Sepulveda Decl. ¶¶ 3, 8).

5

1    Plaintiff argues that the evidence that certain cleaning agents contained ammonia and
2 that Comet contained bleach, establishes that Sepulveda was deliberately indifferent. To begin
3 with, plaintiff presents no evidence, other than his own lay opinion, that the levels of bleach in
4 Comet when combined with the levels of ammonia in the other cleaning materials or in inmates'
5 urine, are sufficient to create hazardous or toxic fumes. More importantly, even if toxic fumes
6 could have been emitted, moreover, deliberate indifference requires showing that Sepulveda
7 actually knew that to be the case. *See Farmer*, 511 U.S. at 837 (official must not only be aware
8 of facts from which inference of risk could be drawn, he must actually draw the inference). As
9 explained above, there is simply no evidence that Sepulveda actually drew the inference that the
10 cleaning materials were hazardous, even in combination with each other or with urine.

11    Plaintiff also argues that the investigations into his complaints were inadequate and that
12 Sepulveda should have ordered more. Even if that were true, as explained in *Farmer*, "an
13 official's failure to alleviate a risk of harm that he should have perceived but did not" does not
14 amount to deliberate indifference. *Farmer*, 511 U.S. at 837-38, 844. Sepulveda was obligated
15 simply "to act reasonably when on notice of a substantial risk of serious harm." *Id*. at 837. As
16 described above, the undisputed evidence shows that Sepulveda did not perceive that plaintiff
17 was being harmed and was not on notice of it. In any event, when plaintiff complained about
18 the fumes, Sepulveda reasonably ordered staff members to investigate the matter. When
19 plaintiff's complaints continued a second and third time, Sepulveda reasonably ordered
20 additional investigations notwithstanding the earlier conclusion that there were no hazardous
21 materials. Although plaintiff again complained one more time about the fumes after the final
22 investigation, given the earlier reports that plaintiff's cell and vents were clear and that the
23 cleaning materials were not hazardous, that cleansers had been approved by County health
24 officials, that bleach was not being distributed, and the lack of complaints from any other
25 inmates, Sepulveda could reasonably conclude that further investigation was not necessary a
26 that point.

27    In addition, in response to plaintiff's complaint that ammonia and bleach would
28 combine to be hazardous, Sepulveda reasonably ordered staff members to ensure that bleach

6

1  was not being distributed.  The undisputed evidence is that Sepulveda was told that bleach was
2  not given to inmates (Scheinuck Decl. Ex. F).  Although plaintiff informed Sepulveda that
3  inmates were being given Comet, there is no evidence that Sepulveda knew that Comet
4  contained bleach; to the contrary he was told repeatedly that plaintiff was not subject to
5  hazardous materials, and that the cleaning materials were approved for safety.  Plaintiff also
6  complains that Sepulveda that the investigations were inadequate because staff members, in
7  response to plaintiff's letter of September 15, 2008, inspected the wrong vents (Scheinuck Decl.
8  ¶ 100(b)).  According to the report of these staff members, they checked the vents in the "3
9  West Max" unit (*id.* at Ex. F).  Plaintiff points to the fact that in his prior complaint, in a letter
10 of September 3, he complained about fumes in "3 East Max" (*id.* ¶ 100(b), Ex. C).  However, at
11 the time of the letter of September 15, plaintiff had been transferred to "3 West Max" and was
12 complaining about the fumes there (*id.* Ex. E).  As plaintiff was housed in "3 West Max" at the
13 time, Sepulveda could reasonably rely on the report by investigators that the vents in that area
14 were clean and clear of hazardous fumes.

15      In sum, there is no evidence that Sepulveda had knowledge Sepulveda had knowledge,
16 after his staff members repeatedly told him otherwise, that the jail-issued cleaning materials
17 were hazardous or that plaintiff was breathing hazardous fumes from them, nor does the
18 undisputed evidence allow an inference that Sepulveda's response to plaintiff's complaints was
19 unreasonable.  As a result, there is no genuine issue of material fact as to whether Sepulveda
20 acted with deliberate indifference to plaintiff's safety.  If the evidence that plaintiff breathed
21 hazardous fumes is true, it is certainly regrettable, but a prison official who does not act with
22 deliberate indifference to an inmate's safety is not liable, "even if the harm ultimately was not
23 averted." *Farmer*, 511 U.S. at 844.

24      b.    Causation

25      In addition to the absence of a genuine issue of material fact that Sepulveda was
26 deliberately indifferent, there is no competent evidence that the toxic fumes plaintiff claims to
27 have breathed were proximately caused by the cleaning materials issued to the inmates.
28 Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can

7

show that the defendant proximately caused the deprivation of a federally protected right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). To defeat summary judgment, sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" actions which violated his or her rights. *Ibid.*

Plaintiff claims that Sepulveda caused him to continue to breathe toxic fumes because Sepulveda failed to restrict or confiscate cleaning materials issued to jail inmates. This claim hinges on proving that the hazardous fumes plaintiff breathed came from inmates using the cleaning materials that the jail issued, as opposed to from some other source. The fumes, even assuming they existed, could have come from other sources such as contraband smuggled by the inmates, cleaning supplies not issued to them but stolen by them, or from cleaning supplies used by jail staff. Plaintiff's sworn statements that he breathed fumes that made him sick, even if true, do not establish the source of the fumes. Plaintiff does not supply any sworn statement that he actually witnessed the un-named inmates combine cleansers issued by the jail and/or their urine that they then sprayed it into the jail vents that led to plaintiff's cell. He supplies no declarations any one else witnessing this practice, or any other evidence that inmates used jail-issued cleaning supplies to "gas" plaintiff. In the absence of such evidence, plaintiff's assertions that he breathed fumes created by jail-issued cleaning materials is merely speculation or conjecture, and there is no genuine issue of material fact that jail officials such as Sepulveda proximately caused plaintiff to suffer the harm he alleges.

For the same reason, plaintiff's proposed amended complaint fails to state a cognizable claim for relief.[1] The amended complaint adds a number of other jail officials as defendants and claims that they were also were also deliberately indifferent to his safety in failing to confiscate the cleaning materials from inmates. Even at the pleading stage, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Such personal involvement requires proximate causation of the violation of the plaintiff's

---

[1] Plaintiff calls it his "Second Amended Complaint," but no First Amended Complaint was filed.

8

rights. *See Leer*, 844 F.2d at 634. The proposed amended complaint sets forth only plaintiff's speculation, and no alleged facts, that would establish that the alleged hazardous fumes were created by the cleaning materials issued to inmates, as opposed to coming from some other source. As a result, the amended complaint does not state a cognizable claim that jail officials proximately caused him to suffer the harm he alleges. Moreover, in the nearly two years that this case has been pending, including approximately nine months of discovery and over three months to oppose summary judgment, plaintiff has been unable to develop or produce any evidence that the fumes came from jail-issued cleaning supplies. As the proposed amended complaint does not state a cognizable claim for relief, and plaintiff has shown that he will not be able to cure the deficiencies in his claims, leave to file the amended complaint will be denied.

**B.     MOTION FOR MATERIALS**

Plaintiff has filed a motion for an order directing the California Department of Corrections and Rehabilitation ("CDCR") to provide him with additional paper and writing implements. Plaintiff's opposition papers, declaration, exhibits, and motion to amend span hundreds of pages. In any event, his motion must be denied because neither the CDCR nor any of its employees or officials are parties to this action. If plaintiff believes that he has any claims against these parties, he must raise them in a complaint filed in a new case.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to compel (docket number 36) is **DENIED**. Plaintiff's motions for continuances (docket number 41 and 46) are **GRANTED**. Plaintiff's motion for appointment of counsel (docket number 45) is **DENIED**.

The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: February  7 , 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\CR.09\SCHEINUCK0727.MSJ.wpd

9